**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| REGINALD HOOKER | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 3:08-cv-0445-B |
| | § | |
| MICHAEL J.  ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to the

provisions of 28 U.S.C. § 636(b) and the order of the District Court filed on March 14, 2008.

The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his

signature thereto, are as follows:

Procedural History:  On September 9, 2005, plaintiff Reginald Hooker filed an

application for disability insurance benefits and Supplemental Security Income ("SSI"), claiming

disability due to gout.  (Administrative Record (hereinafter "Tr.") at 16-17).  He alleged a

disability onset date of July 29, 2005.  (Tr. at 17).

His claim was denied by the state agency initially and on reconsideration, after which he

requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted a hearing

on May 10, 2007 (Tr. 16, 247-268), at which Hooker appeared with counsel and testified on his

own behalf.  The ALJ also received testimony from Karyl Kuuttila, a vocational expert ("VE").

(Tr. 16; 264-67).  On May 18, 2007, the ALJ denied Plaintiff's request for benefits, finding that

his medically determinable impairments did not prevent him from performing other work

existing in significant numbers in the national economy, such as that of a surveyor (surveillance systems monitor),[1] nut sorter, or dowel inspector.  (Tr. 25, 264-65).

Plaintiff timely requested a review of the ALJ's decision by the Appeals Council and on August 21, 2007, the Appeals Council denied his request.  (Tr. 7-10).  Therefore, the ALJ's decision became the Commissioner's final decision for purposes of judicial review.  *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

Plaintiff filed his federal complaint on March 14, 2008.  Defendant filed an answer on June 2, 2008.  On November 3, 2008, Plaintiff filed his brief, followed by Defendant's brief on February 4, 2009.  Plaintiff filed a reply brief on March 18, 2009.

Standard of Review - Social Security Claims:  When reviewing an ALJ's decision to deny benefits, the scope of judicial review is limited to a determination of: (1) whether the ALJ's decision is supported by substantial evidence in the record and (2) whether the proper legal standards were applied in evaluating the evidence.  *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  In determining whether substantial evidence exists, the court reviews the entire record, but does not reweigh the evidence, retry the issues, or substitute its own judgment.  *Villa*, 895 F.2d 1022 (citations

---

[1]  The ALJ listed "surveyor" in his decision; however, the VE testified as to the occupation of "surveillance systems monitor", not "surveyor".  (Tr. 21, 264-265).  Nowhere else in the record is "surveyor" mentioned, leading the Court to believe the ALJ was referring to the "surveillance systems monitor" occupation.  Plaintiff is willing to stipulate that the ALJ meant "surveillance systems monitor".  (Pl. Br. 15-16).

omitted).  Where the Commissioner's findings of fact are supported by substantial evidence, they

are conclusive.  *Perez v. Barnhart*, 415 F.3d 461(5th Cir. 2005).

      <u>Discussion</u>:     To prevail on a claim for disability insurance benefits, a claimant bears the

burden of establishing that he is disabled, defined as "the inability to do any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months."  20 C.F.R. §§ 404.1505, 416.905(a).  Substantial gainful activity is

defined as "work that [i]nvolves doing significant and productive physical or mental duties; and

[i]s done (or intended) for pay or profit."  20 C.F.R. §§ 404.1510, 416.910.

      The ALJ uses a sequential five-step inquiry to determine whether a claimant is disabled.

*See* 20 C.F.R. §§ 404.1520, 416.920.  Under the first four steps, a claimant has the burden of

proving that his disability prevents him from performing his past relevant work, but under the

fifth step, the burden shifts to the Commissioner to prove there is other substantial gainful

activity that the claimant can perform.  *See, e.g., Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.

Ct. 2287, 2294 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).  This

burden may be satisfied either by reference to the Medical-Vocational Guidelines ("Grid Rules")

of the regulations, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, or by expert vocational testimony or

other similar evidence.  *See*, *e.g.*, *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

"A finding that a claimant is disabled or not disabled at any point in the five-step review is

conclusive and terminates the analysis."   *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

      In the present case, the ALJ proceeded to step five.  He noted Hooker was 43 years old at

the time of the decision, with a high school education and past work as a security officer and

driver.  (Tr. 17).  He found Hooker to have the severe impairments of gout and obesity, and that

these impairments would prevent him from returning to his past relevant work.  (Tr. 17, 20).

Based upon the testimony of the VE, the ALJ found that there were jobs which existed in

significant numbers in the national economy that Hooker could perform; taking into

consideration his age, education, work experience, and residual functional capacity (RFC).  The

VE stated the hypothetical limitations posed by the ALJ would "erode the occupational base

down to approximately 89 occupations at the sedentary, unskilled level", listing three as

examples:  surveillance systems monitor with 125,173 jobs nationally and 8,400 in Texas;[2] nut

sorter with 50,000 jobs nationally and 1,520 in Texas; and dowel inspector with 649,130 jobs

nationally and 3,187 in Texas.  (Tr. 21; 264-66).  In concluding that Hooker could perform these

occupations, the VE considered the ALJ's hypothetical question, limiting Plaintiff to "frequent

not constant handling / fingering."  (Tr. 264).  Based upon the VE's testimony, the ALJ

concluded that Hooker was not under a disability and denied his claim for benefits.  (Tr. 21-22).

Plaintiff raises three arguments.  First he argues the ALJ's hypothetical to the VE was

flawed because it limited Plaintiff to "frequent not constant handling / fingering", while the

ALJ's RFC limited Plaintiff to "occasional" handling / fingering.  Second he argues he cannot

perform the job of surveillance system monitor because it requires "level three" language

abilities, which he lacks.  Third he argues reversal is warranted because the decision's step-three

analysis is too cursory to permit meaningful judicial review.  For the reasons discussed below,

the court finds the ALJ's decision is supported by substantial evidence in the record and the

proper legal standards were applied in evaluating the evidence.

---

[2]  The ALJ's decision lists "125,573" jobs, while the VE's testimony lists "125,173" jobs.
This appears to be another typo by the ALJ.  (Tr. 21, 265).

4

**First**, Hooker argues that the ALJ's hypothetical to the VE was flawed because it limited Plaintiff to "frequent not constant handling / fingering", while the ALJ's RFC limited Plaintiff to "occasional" handling / fingering.  Plaintiff argues this constitutes reversible legal error because the ALJ's hypothetical did not set forth all disabilities recognized by the ALJ.  The court disagrees.  During the VE's testimony, after she described the surveillance systems monitor and nut sorter positions, the ALJ asked the VE whether those occupations would require "a lot of fine fingering", and the VE replied they would not, prior to going on to describe the dowel sorter position.[3]  (Tr. 265).  The ALJ then asked whether the nut sorter job could be done with either hand, and the VE responded that it could.  *Id.*  The hypothetical question posed by the ALJ in this case can be said to incorporate reasonably all of Hooker's disabilities recognized by the ALJ.  The ALJ's specific questioning of the VE regarding the handling and manipulation requirements of the proposed jobs make it evident the ALJ took into consideration Hooker's manipulative limitations. Plaintiff's counsel was afforded the opportunity to "correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)".  *See Bowling v. Shalala*, 36 F.3d 431 at 436 (5th Cir. 1994).

The ALJ considered the medical evidence in the record, the objective testimony of Plaintiff, and the testimony of the vocational expert at the hearing.  He posed a hypothetical

---

[3]To wit (Tr. at 265):

Q: Okay, that would not require a lot of fine fingering?

A: No, the DOT lists that within the parameters that you had outlined, frequent reaching and frequent handling and fingering.

5

question to the VE setting forth the limitations he accepted as being present, which are supported by the evidence in the record.  Considering the limitations posed by the ALJ, the VE advised the sedentary, unskilled occupational base of 136 occupations would be eroded to "approximately 89 occupations at the sedentary, unskilled level" that an individual with Hooker's particular limitations could perform, recommending three jobs.  (Tr. 264).  Defendant notes two of those jobs, nut sorter and dowel inspector, require "frequent" handling and fingering, while surveillance systems monitor requires no handling and fingering.  (Def. Br. 4-5).  Upon questioning by the ALJ, the VE testified that "nut sorter" could be done with either hand.  (Tr. 265).  "A vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job."  *Fields v. Bowen*, 805 F.2d 1168 at 1170 (5th Cir. 1986).

In this case, the VE stated there were approximately 89 jobs available to Plaintiff. Assuming, arguendo, that Plaintiff's manipulative limitations would further erode the occupational base of 89 jobs as suggested by the VE, she still described at least two jobs, nut sorter and surveillance systems monitor, that could be performed by Plaintiff, given his manipulative limitation to "occasional" handling or fingering.  The ALJ's hypothetical, and his follow-up question to the VE, reasonably incorporated the limitations and disabilities he found Plaintiff to have, thus satisfying the Bowling legal standard.  *See Bowling*, 36 F.3d 431 at 436. There is substantial evidence to support the ALJ's decision that Plaintiff was capable of performing the jobs identified in the VE's testimony and therefore was not disabled within the meaning of the Social Security Act.  *Fortenberry v. Harris*, 612 F.2d 947 at 950 (5th Cir. 1980).

**<u>Second</u>** Hooker argues he cannot perform the job of surveillance system monitor because

it requires "level three" language abilities, which he lacks.[4]  Defendant counters that Hooker never alleged limitations in language abilities at any prior stage of his disability review, and further that he had to write and complete reports for his former job at DART and that he completed high school without the need to take any special education classes.  (Def. Br. 6-7; Tr. 55, 84-89, 99-111).  As Plaintiff notes, numerous written reports by him are before the court, in the form of his handwritten social security application forms.  (Pl. Br. 16-18; Pl. Reply 7).  At the hearing, Hooker testified before the ALJ and the VE.  (Tr. 250-64).  After listening to Hooker's testimony, the ALJ presented a hypothetical to the VE.

Both the ALJ and VE had the opportunity to hear Hooker speak at the hearing.  "The value of a vocational expert is that [s]he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed. A vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job."  *Fields, supra,* 805 F.2d at 1170.  In this case, the ALJ and VE did not find Plaintiff's language difficulties to be of such magnitude as to prevent him from being able to perform the job of a surveillance systems monitor.  The ALJ's RFC finding, and his finding-

---

[4]From the Dictionary of Occupational Titles ("DOT") (1991) job. no. 379.367-010 (surveillance - system monitor), to wit:

Language: Level 3 - READING: Read a variety of novels, magazines, atlases, and encyclopedias.  Read safety rules, instructions in the use and maintenance of shop tools and equipment, and methods and procedures in mechanical drawing and layout work.

WRITING: Write reports and essays with proper format, punctuation, spelling, and grammar, using all parts of speech.

SPEAKING: Speak before an audience with poise, voice control, and confidence, using correct English and a well-modulated voice.

based on the testimony of the VE- that Plaintiff is capable of performing the "surveillance system monitor" position, are supported by substantial evidence. *Accord, see Carey v. Apfel*, 230 F.3d 131 at 145 (5th Cir. 2000), opining that "this Court has acknowledged that the DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job."

Plaintiff also argues that the surveillance system monitor does not exist in significant numbers in the national economy to satisfy the requirements of step five, and that the ALJ considered all three potential occupations suggested by the VE, but did not provide findings as to whether each of those positions alone would be enough to satisfy the "significant numbers" requirement.[5] The VE testified that Plaintiff could perform approximately 89 occupations at the sedentary, unskilled level", (Tr. 264-66), listing three occupations as examples. The ALJ's finding, based on the VE's testimony, that significant jobs existed within the national economy

---

[5] Plaintiff cites to *Walker v. Shalala*, 1994 WL 171209 at *2 (S.D.Tex., 1994). In *Walker*, surveillance system monitor was the only job listed by the VE that Plaintiff could perform, with an estimated 1,800 jobs in Texas and 18,000 nationally. The district court there found the Secretary failed to meet the step five burden on the grounds that those numbers were not significant when considered as a percentage of the work force, stating "[i]solated jobs that exist only in very limited numbers in relatively few locations outside the region where you live are not considered 'work which exists in the national economy.' "

*Mericle v. HHS*, 892 F.Supp. 843 (E.D. Tex. 1995), cited *Walker* for the same proposition, but also noted that "[t]he Fifth Circuit has offered no test or "magic number" for determining a "significant number." *Mericle* at 847. *Gaspard v. Social Security Admin. Com'r*, 609 F.Supp.2d 607, 618 (E.D.Tex., 2009) (citations omitted) discussed the two cases and stated that "various federal appellate courts have found 500, 650-900 and 1400 jobs sufficient under particular circumstances of those cases."

8

that Hooker could perform is supported by substantial evidence.

**Third**, Plaintiff argues reversal is warranted because the decision's step-three analysis is too cursory to permit meaningful judicial review.  The ALJ found Hooker has the severe impairments of gout and obesity, and stated "[t]here is no evidence [Hooker] has experienced symptomatology that would meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4."  (Tr. 17-18).  The ALJ acknowledged his duties under step three, considered Hooker's symptoms, addressed Hooker's credibility, and discussed the objective medical evidence throughout his decision.  (Tr. 18-20).  "The ALJ was required to discuss the evidence offered in support of [Plaintiff's] claim and explain why [he] was not considered disabled at Step Three."  *Moore v. Astrue*, 2008 WL 4602732 at *2 (N.D.Tex. 2008), citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

The ALJ's decision in this case adequately discusses Plaintiff's alleged impairments and describes the objective medical evidence.  He noted Hooker was examined in an emergency room on August 22, 2005 for abdominal pain and reported having five to six gouty arthritis attacks per year, but had not required previous treatment for gout since November 12, 2004, and that a physical examination of Hooker in August 2005 showed 5/5 motor strength throughout and no cyanosis, clubbing, or edema.  (Tr. 18).  He noted Hooker had a history of not taking his medication, referring to the November 21, 2005 consultative evaluation by Dr. Sreekanth Chintamaneni, revealing "at most moderate functional limitations".  *Id.*  The ALJ addressed medical records concerning Plaintiff's reduced ambulation and instances of pain and swelling, and discussed why he gave less weight to the physician's statement of Dr. Jacques Roy.  (Tr. 18-19).  In this case, the ALJ described the medical evidence and addressed the impairments alleged

9

by Plaintiff sufficiently to enable the court to conduct meaningful judicial review of his decision.

While Plaintiff alleges the ALJ erred by failing to reference which listings he considered, Plaintiff has not offered evidence to show that he meets or equals a listing.  See *Moore* at *2; *Audler*, 501 F.3d at 448-449.  The court finds the ALJ's step three analysis was adequately developed, notwithstanding the fact that he did not refer to any specific listings.  Any procedural error resulting from the ALJ's failure to reference a specific listing in this case constitutes at most harmless error, and does not justify remand.  *Id.*

**RECOMMENDATION:**

For the foregoing reasons, it is recommended that the District Court enter its order AFFIRMING the decision of the Commissioner and DISMISSING this action with prejudice.  A copy of this recommendation shall be transmitted to counsel for the parties.

Signed this 18th day of June, 2009.

WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten (10) days after being served with a copy of this recommendation.  Pursuant to *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten (10) day period may bar a *de novo* determination by the district judge of any finding of fact and conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and

10

conclusions of law accepted by the district court.